IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SHEILA E. EMOND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 09-0702-CV-W-ODS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER AND OPINION AFFIRMING COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying supplemental security income (SSI) benefits. The Commissioner's decision is affirmed.

## I. BACKGROUND

Plaintiff is a 49-year-old female smoker with a 12th-grade education and an employment history as a greenhouse laborer, poultry worker, janitor, and babysitter. This Court previously has considered whether Plaintiff was disabled. In Case No. 02-0317-CV-W-ODS-SSA (Doc. 25), the Court affirmed the Commissioner's decision denying Plaintiff's initial SSI application filed on December 28, 1999, holding that substantial evidence supported the ALJ's decision Plaintiff was not disabled from fibromyalgia, carpal tunnel syndrome, and chronic fatigue syndrome. While this case was on appeal, the Eighth Circuit granted the Commissioner's motion to remand for reconsideration by the Appeals Council for SSA. On May 15, 2006, the Appeals Council remanded the case back to the ALJ to reassess Plaintiff's claims. The Appeals Council also noted that Plaintiff had filed a second SSI application for benefits on May 7, 2001, that an ALJ had denied this application, and that remand was being ordered in

that case as well. The Appeals Council consolidated both remanded cases for further proceedings before an ALJ.

One of the responsibilities of the ALJ on remand was to more fully evaluate Plaintiff's mental impairments. John Keough, MA, had performed a consultative psychological examination of Plaintiff on October 28, 2003, and had rendered mental diagnoses of mood disorder due to fibromyalgia and anxiety disorder due to fibromyalgia. Keough had not indicated that Plaintiff's impairments were disabling, however, finding only slight to moderate limitations in Plaintiff's ability to function. Roger P. Wise, Psy.D., had issued a psychological report dated March 19, 2004, diagnosing Plaintiff with major depression, recurrent, severe, and indicating that Plaintiff's emotional problems stemmed from physical pain. Dr. Wise assigned Plaintiff a GAF score of 50 and concluded Plaintiff was incapable of engaging in gainful employment for at least 1 year.

In an unfavorable decision dated July 13, 2007, the ALJ discredited Keough's and Dr. Wise's opinions. The ALJ concluded the examiners' diagnoses relied too heavily on Plaintiff's physical condition, which the ALJ determined was outside their expertise. The ALJ also concluded Keough's and Dr. Wise's opinions were inconsistent with the findings of Cedric B. Fortune, M.D., whose physical examination report dated October 18, 2003, concluded Plaintiff was able to sit, stand, walk, lift and carry, push, pull, reach, handle, and finger without limitation. In an Order dated May 2, 2008, the Appeals Council again remanded the case back to the ALJ. The Appeals Council wrote that the ALJ improperly discounted Keough's and Dr. Wise's opinions of Plaintiff's mental health. Referring to Keough, the Appeals Council stated,

> Mr. Keough diagnosed the claimant with mental impairments (anxiety and mood disorders) and expressed his opinion as to the etiology of these mental impairments, i.e., her medical concerns. Therefore, diagnosing a patient with a mental impairment was not outside his area of expertise, regardless of what the cause of her mood and anxiety disorders might be.

The Appeals Council directed the ALJ to obtain medical expert evidence to help assess the nature and severity of Plaintiff's mental impairments.

Plaintiff submitted additional medical records for the ALJ's consideration from Pleasant Hill Medical Clinic. These records revealed that on August 22, 2007, Plaintiff made a first-time office visit to Cassandra Beatty, M.D. Dr. Beatty noted Plaintiff was at the office for "pain management" and that Plaintiff stated she had smoked marijuana for many years for pain relief. Plaintiff was seeking a refill of her Vicodin prescription and became upset during the exam. Dr. Beatty noted:

> We were discussing options like trying a nonnarcotic pain med (like Ultram) to see if she got some relief from that or seeing a surgeon to see if she is a candidate for surgery or starting cymbalta and she got very upset. She started crying and shaking and gathering her stuff and stated 'you doctors don't listen to me!" I informed her I was perfectly willing to listen to her and was actually telling her good news that she might get a surgery that would decrease her [symptoms] but she said 'you just don't want to give me my vicodin' . . . . She left very angry cussing and slamming doors.

The records from Pleasant Hill Medical Clinic also reveal that Plaintiff made a first-time office visit to Dinesh Patel, M.D., about 1 month later, and that Dr. Patel wrote Plaintiff a prescription for Vicodin with two refills.

Plaintiff additionally supplemented her file with medical records from Dr. Wise (the psychologist who in 2004 assessed Plaintiff with a GAF score of 50). These records revealed that Dr. Wise conducted another psychological evaluation of Plaintiff on January 16, 2008. Dr. Wise noted Plaintiff had attended no outpatient counseling for her depression. Dr. Wise diagnosed Plaintiff with major depressive episode recurrent moderate and again assigned Plaintiff a GAF score of 50.

The ALJ conducted a hearing on February 9, 2009. Consistent with the Appeals Council's remand Order, Dr. Richard Kaspar, a clinical psychologist, testified as a medical expert regarding Plaintiff's mental impairments. Dr. Kaspar testified that both Dr. Wise and Keough's opinions were flawed because they each premised their mental diagnoses on Plaintiff's physical limitations. Dr. Kaspar specifically mentioned a psychological report completed by Dr. Wise in 2005 which stated, "It is very unlikely that she would be gainfully employed as long as her physical limitations persist." Seizing on

this language, Dr. Kaspar testified that Dr. Wise had exceeded his expertise by offering an opinion on Plaintiff's physical limitations. Dr. Kaspar likewise testified that by diagnosing Plaintiff with a mood disorder and an anxiety disorder related to fibromyalgia, Keough was "suggesting . . . that he has some capacity to appreciate or assess her fibromyalgia, which is again . . . beyond his level of comprehension or confidence." Despite these criticisms, Dr. Kaspar testified Plaintiff had a severe mental disorder that was either a result of or a reaction to decreased capacity from physical impairment. Dr. Kaspar concluded Plaintiff would be mentally capable of maintaining employment, assessing her as moderately impaired in her activities of daily living, social functioning, and concentration, persistence, and pace, with no episodes of decompensation.

Plaintiff and a vocational expert also testified at the hearing. Plaintiff's testimony focused on her physical impairments. Plaintiff claimed she suffered from fibromyalgia, degenerative disc disease, a herniated disc, tendonitis in her joints, carpal tunnel syndrome, chronic fatigue syndrome, and migraines that occurred 4-5 times per month. Plaintiff stated that she could only stand or sit 15 minutes at a time, that her arms tingled if she raised them over her head, that she had trouble bending, and that she needed to lie down and rest 2-3 times per day. Plaintiff also stated that she could not lift anything "heavy" (which she described as over 20 pounds), that she had problems concentrating, and that when she had migraines they sometimes would debilitate her for an entire day. The ALJ asked the VE to consider a hypothetical worker able to do sedentary work with the following exceptions: limited to simple, repetitive, and routine tasks; work environment as stress-free as possible; no repetitive overhead reaching and lifting with either arm; no fine dexterity with either hand; no lifting from the floor; must be afforded an option to sit/stand at will; only occasional bending; no crawling, kneeling, crouching, or squatting; work environment as clean and free from pollutants as possible. The VE testified that a hypothetical worker with these limitations would not be able to perform Plaintiff's past work, but would be able to perform sedentary, unskilled work as a surveillance systems monitor (DOT 379.367-010), credit checker (identifying DOT

number 237.367-014[1]), and document preparer (DOT 249.587-018). With the exception of the sit/stand option, the VE testified that her opinion did not conflict with the DOT.

The ALJ issued a final decision denying Plaintiff benefits. The ALJ incorporated the credibility assessments of the previous ALJs, who had noted Plaintiff's scant work history and lack of mental health treatment. With respect to Plaintiff's mental impairments, the ALJ relied on Dr. Kaspar's testimony in discrediting Dr. Wise's opinions, finding that those opinions addressed Plaintiff's physical conditions beyond Dr. Wise's expertise. The ALJ deemed credible Dr. Kaspar's opinion that Plaintiff had only moderate functional limitations due to her depression and anxiety. The ALJ determined Plaintiff had the residual functional capacity to perform the full range of sedentary work except for the limitations included in his hypothetical to the VE. Based on the VE's testimony, the ALJ concluded Plaintiff could perform jobs that existed in significant numbers in the national economy, resulting in a finding of not disabled.

## II. DISCUSSION

"[R]eview of [the Commissioner's] decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. *Forsythe v. Sullivan*, 926 F.2d 774, 775 (8th Cir. 1991). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Smith v.*

---

[1] This DOT number corresponds to the job of "CALL-OUT OPERATOR." DOT 237.367-014, DICOT 237.367-014 (Westlaw). The Court could not find the job of "credit checker" in the DOT.

5

*Schweiker*, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

Plaintiff's first argument is that the ALJ failed to properly consider that Dr. Wise assessed her with a GAF score of 50. A GAF score of 50 or below indicates "'[s]erious symptoms . . . or any serious impairment in social, occupational or school functioning . . . .'" *Pate-Fires v. Astrue*, 564 F.3d 935, 944 (8th Cir. 2009) (citations omitted). An ALJ may discredit a low GAF score that conflicts with evidence that the claimant has greater abilities. *See Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010). Here, the ALJ did not specifically reject the GAF score; rather, the ALJ discounted Dr. Wise's opinion as a whole, relying on Dr. Kaspar's testimony to find that Dr. Wise's opinion was beyond his expertise. The Eighth Circuit has affirmed an ALJ's decision to disregard psychologists' opinions that were based largely on the psychologists' analyses of a claimant's physical ailments, reasoning that the psychologists' opinions were beyond their expertise. *See Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010). But after reviewing Dr. Wise's reports, the Court does not agree that Dr. Wise's opinion was based largely on his analysis of Plaintiff's physical ailments. Dr. Wise diagnosed Plaintiff with severe depression only after conducting a clinical interview, a mental status exam, and administering the Millon Clinical Multiaxial Inventory (MCMI). In his latest report, Dr. Wise compared the results from previous MCMI administrations and concluded Plaintiff's "anxiety and depression levels continue to be high." Although Dr. Wise also expressed his opinion that the etiology of Plaintiff's mental impairments was her physical ailments, that did not render Dr. Wise's diagnoses beyond his expertise. Even Dr. Kaspar (the ME at the hearing) testified that Plaintiff's mental impairments were likely the result of or a reaction to her reduced physical capacity. The ALJ's decision to discount Dr. Wise's opinion as beyond his expertise is not supported by substantial evidence.

The ALJ nevertheless had good reasons for discrediting the low GAF assessment rendered by Dr. Wise. The sole purpose of Dr. Wise's examinations was to determine Plaintiff's eligibility for Medicaid, meaning that Dr. Wise was a "nontreating source." 20 C.F.R. § 416.902 (stating that medical source is nontreating source if claimant's relationship with source is based solely on claimant's need to obtain report in

support of claim for disability).  Since Dr. Wise was not a "treating source," his opinion could not be entitled to "controlling weight."  20 C.F.R. § 416.927(d)(2); SSR 96-2p (stating that opinions from acceptable medical sources other than treating sources "can never be entitled to 'controlling weight'").  The ALJ concluded Dr. Wise's opinion was inconsistent with other substantial evidence in the record and incorporated the credibility findings of previous ALJ's, one of which discredited Plaintiff's claims of mental impairment because she had not sought ongoing mental health treatment.  This was a valid reason for concluding Plaintiff's mental impairments were not disabling.  *Gowell v. Apfel*, 242 F.3d 793, 798 (8th Cir. 2001) (noting that finding of disability is disfavored where claimant has not had ongoing treatment or experienced deterioration or change in her mental capabilities).  Keough, the licensed psychologist who examined Plaintiff in 2003, opined that Plaintiff only suffered from slight to moderate functional limitations.  In 2009, Dr. Kaspar similarly opined based on his record review that Plaintiff suffered from moderate functional limitations.  Dr. Wise's opinion as to the severity of Plaintiff's mental impairments was inconsistent with these opinions and her lack of mental health treatment.  The ALJ did not err in discrediting Dr. Wise's low GAF score.

Plaintiff next complains that the ALJ failed to included in his RFC assessment the moderate functional limitations caused by her mental impairments and identified by Dr. Kaspar.  This argument fails.  The ALJ formulated Plaintiff's RFC taking into account her mental impairments.  The ALJ wrote, "She testified that she has problems concentrating and with her memory because of her mental impairments, so she is limited to simple, repetitive, unskilled work as stress free as possible."  The Court also notes that a "'moderate' ranking means that 'the individual is still able to function satisfactorily'" in a functional area.  *Lacroix v. Barnhart*, 465 F.3d 881, 888 (8th Cir. 2006) (citation omitted).  The ALJ's RFC assessment was not required to include the functional limitations deemed moderate by Dr. Kaspar.  *See id.* (holding that ALJ's RFC determination was supported by substantial evidence even though it did not include moderate limitations noted by psychologist).  For the same reasons, the Court also rejects Plaintiff's argument that the ALJ's hypothetical to the VE was invalid because it did not specifically mention the moderate functional limitations.  *See Cox v. Astrue*, 495

F.3d 614, 620-21 (8th Cir. 2007) (stating that ALJ's hypothetical must "capture[ ] the concrete consequences of a claimant's deficiencies" (citation omitted)).

Plaintiff lastly argues that the VE's testimony she could work as a surveillance systems monitor, credit checker (or call-out operator), and document preparer conflicted with the DOT because the DOT states that each of these jobs requires some level of finger dexterity and some level of manual dexterity. The Court notes that the ALJ's hypothetical and RFC assessment restricted Plaintiff from performing sedentary jobs requiring *fine* dexterity, which the ALJ defined as "repetitive lifting of small items like hairpins, paperclips, etcetera, etcetera, etcetera." The DOT descriptions for the jobs identified by the VE state that these jobs require a level of manual dexterity and finger dexterity, but they do not indicate that the jobs require repetitive lifting of small items like hairpins or paperclips, and Plaintiff notably does not argue that the jobs require such activity. *See* DICOT 237.367-014 ; DICOT 249.587-018; DICOT 379.367-010 (Westlaw). The VE's testimony did not conflict with the jobs described in the DOT.

## III. CONCLUSION

The Commissioner's decision is affirmed.
IT IS SO ORDERED.

DATE: July 2, 2010

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT

8